UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEN LIQUOR, INC.,  )
d/b/a SOUTHGATE LIQUOR.  )
                                        )        06-15279
       Plaintiff,  )
v  )        Hon. Nancy G. Edmunds
                                        )
UNITED STATES FIDELITY &  )
GUARANTY COMPANY,  )
                                        )
       Defendant.  )
_____  )

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Plaintiff, Allen Liquor, Inc., d/b/a Southgate Liquor, by and through their attorneys Fabian, Sklar & King, P.C., and in Response to Defendant's Motion for Summary Judgment states:

1. Plaintiff admits this allegation.

2. Plaintiff admits this allegation as to ownership of the building. As to the balance of this Paragraph, Plaintiff admits only that Allen Liquor, Inc., operated the party store business (as opposed to "the building").

3. Plaintiff admits that Bahjet Sharrak was a 49% shareholder of Allen Liquor, Inc.

4. Plaintiff admits this allegation.

5. Plaintiff admits this allegation.

6. Plaintiff admits this allegation, except with regard to Defendant's statement that the fire started "inside the store", as to which Plaintiff has no first-hand knowledge.

7.    Plaintiff admits this allegation.

8.    Plaintiff admits that the Court accepted nolo contendere pleas from Bahjet Sharrak and Alaa Habib. Plaintiff denies Defendant's contention that Bahjet Sharrak and Alaa Habib "stand as convicted of arson in connection with the fire", at least for purposes of this civil suit, as this conclusion is inconsistent with Michigan law. Defendant's statement that charges against Mike Sharrak were dismissed is correct.

9.    Plaintiff admits this allegation.

10.   As to Defendant's state of mind in or reason for denying the claim, Plaintiff neither admits nor denies this allegation for lack of knowledge. The language of the documents exchanged by the parties speaks for itself.

11.   Plaintiff admits this allegation except to the extent it states or implies Plaintiff's claim is limited to "proceeds under the policy."

12.   Plaintiff denies this allegation, as it is untrue.

13.   Plaintiff denies this allegation, as it is untrue. Plaintiff further denies the factual premise of the assertion (i.e. that either Bahjet Sharrak or Alaa Habib were the partner of the Plaintiff Allen Liquor, Inc.).

14.   Plaintiff does not contest this allegation.

WHEREFORE, the Plaintiff Allen Liquor, Inc. d/b/a Southgate Liquor respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment.

PLAINTIFF FURTHER REQUESTS that this Honorable Court enter an Order granting Summary Judgment in its favor, pursuant to Fed R. Civ P. 56(b),

for the reasons set forth in the attached Brief.

                FABIAN, SKLAR & KING, P.C.

By: /s/Patrick A. King
PATRICK A. KING (P27701)
DOUGLAS G. MCCRAY (P55568)
Attorney for Plaintiff
33450 West Twelve Mile Road
Farmington Hills, MI 48331
(248) 553-2000
pking@fabiansklar.com

Dated: July 5, 2007

## CONCISE STATEMENT OF ISSUES PRESENTED

1.  Is coverage barred pursuant to the "dishonest or criminal acts" exclusion of the insurance policy by virtue of employee Alaa Habib's pleading guilty to arson, when he was not a partner, director, trustee or authorized representative of the corporate policyholder, had no ownership interest in the corporation or damaged property, and the policy expressly states that the exclusion does not apply to "acts of destruction by your employees"?

    Defendant answers "Yes".

    Plaintiff answers "No".

2.  Is coverage barred pursuant to the "dishonest or criminal acts" provision of the policy by Bahjet Sharrak's pleading guilty to arson, when he was a part-time employee and minority shareholder, not the owner of the damaged property, not a partner, director, trustee, or authorized representative of the corporate Plaintiff, was never entrusted with the property, and the policy expressly states that the exclusion does not apply to "acts of destruction by employees"?

    Defendant answers "Yes".

    Plaintiff answers "No".

3.  May Defendant eliminate coverage for fire losses when the Michigan legislature has expressly stated that it is <u>required</u> to provide coverage for <u>all</u> direct losses by fire and lightning (MCL 500.2833 and MCL 500.2832, as incorporated by MCL 500.2833(2))?

    Defendant answers "Yes".

    Plaintiff answers "No".

4

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Cases:**                                                                                      **Page:**

*Angott v. Chubb Group Ins.,* 270 Mich App 465,
483 n.10, 717 NW 2d 341 (2006)..........................     16

*K & T Enterprises, Inc., v Zurich Insurance Company*       11, 12, 13
97 Fed 3d 171 (6th Cir., 1996)..........................     14

*Randolph v State Farm Fire & Cas. Co.,* 229 Mich App 102,
105, 580 NW2d 903 (1998).....................................     20

*United Gratiot Furniture Mart, Inc. v Michigan Basic
Property Insurance Association,* 159 Mich App 94,
406 NW2d 239 (1987)..........................................     12,14

*Williams v Auto Club Group Ins. Co.,* 224 Mich App 313,
318, 569 NW2d 403 (1997).....................................     16

**Statutes:**

MCL 500.2832.................................................     15,16,17,18
                                                                   19

MCL 500.2833.................................................     15,16,17,18
                                                                   19,20
MCL 500.2834.................................................     18,19,20
MCL 500.2860.................................................     20
PA 1990, No. 305, § 1........................................     15,16

**Other Authorities:**

*Am Jur. 2d*..................................................     12
*Websters New World Dictionary,* 2d Ed.,
College Edition, 1986........................................     18

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. PLAINTIFF'S COUNTER-STATEMENT OF FACTS

Defendant's Statement of Facts contains two glaring inaccuracies, both of which appear on page 2 of its brief. First, Defendant states "During their examinations under oath, Mike and Bahjet Sharrak both admitted that each had an interest in the business personal property being claimed". This is false. On one of the two pages of Mike Sharrak's examination under oath cited by Defendant and attached in support of this proposition (See Defendant's Exhibit B, page 6), Mike (accurately) states that both he and Bahjet are owners of *Allen Liquor, Inc.* which is the Plaintiff policyholder, but says nothing about the business personal property. On the other cited page, Mike specifically states that the purchase of the business personal property (i.e. fixtures, equipment, coolers, etc.) was done "under the store name". (See Defendant's Exhibit B, p. 29; emphasis added);see also Exhibit C, Affidavit of Mike Sharrak).

Second, Defendant contends that "each was a partner in the party store business", relying upon the testimony of Bahjet Sharrak to that effect. Bahjet barely speaks English, is not an attorney, and is not competent to render a legal opinion regarding his legal relationship with Allen Liquor, Inc. Whatever he may think, Allen Liquor, Inc. is a corporation, not a partnership (see Exhibit A, "Corporate Entity Details" from Michigan Department of Labor and Economic Growth), and Bahjet was a minority shareholder, not a partner (Exhibit C). The importance of this fact is evident when viewed in the context of the express policy language, which specifically excludes

6

coverage for certain conduct by Allen Liquor's <u>partners</u>, but not its <u>minority shareholders</u>. (Exhibit B, p. 25 of 38.).

Defendant's Statement of Facts also blurs the lines among the pre-loss roles of the three persons discussed -- Mike Sharrak, Bahjet Sharrak and Alaa Habib. In that regard, Mike Sharrak, who was found to be *not guilty* of any wrongdoing in connection with the fire, was the president of Allen Liquor, Inc., as well as its majority shareholder (Exhibit C).

His brother, Bahjet Sharrak was a <u>minority</u> shareholder and a part time employee of Allen Liquor, Inc., working just 2 days per week. (Id). There is not even a colorable argument that Bahjet Sharrak exercised any sort of substantial control (complete or otherwise) over the store. To the extent that an insurance payment is made, it will be Mike, and not Bahjet, who controls the disposition of these proceeds. (Id).

Lastly, Bahjet's son Alaa Habib had no ownership interest whatsoever in the corporation (or for that matter the building or personal property). He was merely an employee, albeit an important one. It was Alaa Habib, and not Bahjet, who managed the store. (Id).

Implicit in Defendant's brief is the idea that Allen Liquor's President and majority shareholder – Mike Sharrak – was probably somehow complicit, even though the charges against him were dismissed (i.e. that all three were in cahoots with respect to the arson). This is untrue. Indeed, after Mike learned of Bahjet's involvement in the fire, the rift that developed between the two brothers – one having pleaded guilty to arson and one innocent of any wrong doing -- was so deep that they have barely spoken. (Id). Bahjet has not seen their mother since Mike learned of his guilty

7

connection with the fire, because she lives with Mike, who will not allow Bahjet to set foot in the house. Bahjet's son Omar Habib was involved in a catastrophic car accident, and is likely dying. The rift between the two brothers runs so deep that Mike has not visited his dying nephew. (Id). Recently, Alaa was married. Mike, two siblings who live with him and their mother did not attend. Lastly, Mike has initiated a lawsuit on behalf of Allen Liquor, Inc. against his brother (Macomb County Case No. 06-4231-CZ, currently pending before Judge Edward Servitto), which is currently pending. In short, while the Defendant insurer would like this Court to assume that there is some unproven conspiracy involving Mike Sharrak, the evidence compels the contrary conclusion.

## II. ARGUMENT

### A. OVERVIEW OF POLICY LANGUAGE

In this case, Defendant maintains that resolution of this matter turns on proper interpretation (in light of the facts of this case) of the "dishonest and criminal acts" exclusion[1]. That provision states:

> "2. We will not pay for loss caused by or resulting from any of the following. Unless otherwise stated, the following applies to all SECTION 1 – COVERAGES.
>
> * * *
>
> E. Dishonesty. Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:
>
> > (1) whether acting alone or in collusion with others; or
> >
> > (2) whether or not occurring during the hours of employment.

---

[1] Plaintiff does not concede this point (see II C, below).

8

> This exclusion does not apply to acts of destruction by your employees or leased workers, but does apply to theft by employees or leased workers…". (Exhibit B, page 25 of 38).

The word "you" is defined elsewhere in the policy as "the Named Insured shown in the Declarations." (Exhibit B, page 1 of 38). In this case, the "Named Insured" is "Southgate Liquor", which is a d/b/a for "Allen Liquor, Inc.". Thus, "You" means "Allen Liquor, Inc."

Interpretation of the above provision is straightforward. Some "dishonest or criminal acts" will trigger the exclusion if they are performed by certain people or entities, will trigger the exclusion. The enumerated categories of people and entities include the following:

1. "You" (i.e. Allen Liquor, Inc.);

2. Anyone else (other than Allen Liquor) with an interest in the property;

3. Partners of Allen Liquor, Inc. or of someone else with an interest in the property;

4. Employees of Allen Liquor or of someone else with an interest in the property;

5. Directors of Allen Liquor or of someone else with an interest in the property;

6. Trustees of Allen Liquor or of someone else with an interest in the property;

7. Authorized representatives of Allen Liquor or of someone else with an interest in the property; and

8. Anyone to whom Allen Liquor has entrusted the property.

"Dishonest or criminal conduct" by people or entities falling into one of the above categories *may* trigger the exclusion. Conduct by those *not* falling into one of these

9

categories <u>will not</u> trigger it. Once triggered, in the absence of a conflicting Michigan statute (see below for discussion), coverage is barred unless the exception for "acts of destruction by employees" applies.

As Defendant points out in its brief, in Michigan, the Insurer bears the burden of proving that an exclusion applies to bar coverage (as well as the burden on its affirmative defenses).

## B. APPLICATION OF POLICY LANGUAGE TO FACTS OF THIS CASE

### 1. Mike Sharrak and Alaa Habib

As a threshold issue, for the exclusion to apply, there must be a "dishonest or criminal act". The charges against Mike Sharrak were dismissed, there is no evidence that he committed arson or has a guilty connection to the subject fire, and Defendant does not argue otherwise. Accordingly, the conduct of Mike Sharrak did not trigger the dishonesty exclusion.

Allegedly, Alaa Habib engaged in arson, which certainly would constitute a "criminal act". However, he did not have any interest in the building or the business personal property. Furthermore, he was not a partner, director, trustee, or authorized representative of the corporate policyholder, Allen Liquor, Inc. Lastly, there is not even a colorable argument that Alaa Habib, who had <u>absolutely no ownership interest in the corporate insured</u>, constitutes "You" for purposes of the subject insurance policy.

While Defendant maintains that Alaa Habib was "entrusted" with the damaged property, this is irrelevant, because he was an employee of the corporate policyholder (i.e. the manager). Consequently, his conduct falls squarely within the exception for "acts of destruction" by employees. Of course, arson is the archetype "act of

10

destruction, as evidenced by the fact that on page 1 of its brief, Defendant even states "As a result of the fire, the structure and contents located therein were <u>destroyed</u>" (emphasis added)[2]. Thus, Alaa Habib's conduct did not trigger the exclusion.

### 2. Bahjet Sharrak and Defendant's reliance on *K & T Enterprises*

Allegedly, Bahjet engaged in the criminal act of arson. Accordingly, it is necessary to analyze whether he falls into one of the enumerated categories of persons and entities. In that regard, Bahjet did not own the building, and it was Allen Liquor, Inc., not Bahjet, that "had an interest in" the business personal property. Furthermore, he was not a partner, director, trustee, or authorized representative of the Plaintiff, Allen Liquor, Inc., nor was he "entrusted" with the property (recall, Bahjet only worked at the store 2 days per week, and Defendant does not maintain otherwise). Lastly, under the exclusion, damage caused by acts of destruction by employees is covered (see discussion of Alaa, above).

Of course, Defendant argues that Bahjet's illegal conduct is directly attributable to the insured corporation, Allen Liquor, Inc. (referred to as "you" in the exclusion. It is this issue -- whether a shareholder's conduct can be attributed to a corporate insured – that was the subject addressed in *K & T Enterprises, Inc., v Zurich Insurance Company,* 97 Fed 3d 171 (6th Cir., 1996), relied upon by Defendant in its Brief.

*K & T Enterprises, supra,* was the second of two decisions (by two different courts) addressing similar issues. The first was is *United Gratiot Furniture Mart, Inc. v Michigan Basic Property Insurance Association,* 159 Mich App 94, 406 NW2d 239

---

[2] Note also that the policy specifically distinguishes acts of destruction (i.e. vandalism, arson) from "dishonest or illegal acts" that are not inherently destructive, such as "theft".

(1987). Initially, the *United Gratiot* (citing *Am. Jur. 2$^d$*) Court stated the general rule as follows:

> **As a general rule, the willful burning of property by a stockholder of a corporation is not a defense against the collection of insurance by the corporation;** nor can a corporation be prevented from collecting the insurance because its agents willfully set fire to the property without the participation or authority of the corporation or of all the stockholders of the corporation. . . . Likewise, under the principle of law that no one should be allowed to profit by his own wrong, an **insured corporation will not be allowed a recovery on fire insurance policies where the incendiarist owns all or practically all of the stock in the insured corporation, or is exclusive management of the corporate property.** (*Id.* at 98-99; Emphasis in original and added).

The *United Gratiot* Court then discussed the distinction between situations in which the shareholder "has exclusive control over the corporation" (in which "the corporation is precluded from recovering benefits under its fire insurance policy") (*Id.* at 99) and those in which exclusive control was lacking. In this latter situation, the Court unequivocally stated that **"However, in instances where it is not shown that the arsonists had exclusive control over the corporation, insurers are not permitted to deny coverage"**.

In *United Gratiot,* the Court denied relief because the arsonist <u>had</u> exercised exclusive control over the corporation. The Court stated "We hold that an insurance carrier may assert arson as a defense against the corporation's claim of fire loss if it is factually demonstrated that the individual who set or procured the setting of the fire exercised <u>complete dominance and control</u> over the affairs of the corporation." (*Id.* at 101, Emphasis added). In ruling as it did, the Court was careful to point out that "[t]he rule we have adopted applies only in situations where the incendiarist have pervasive control over the corporation. **Thus, the incendiarist would control the disposition of**

**the insurance proceeds which the corporation would receive…"**. *(Id.* at 101) (emphasis added).

In *K&T Enterprises,* the stock was owned by two 50% shareholders, who were also husband and wife and, as the Court put it, an "economic unit". The husband was the president and sole officer of the corporation, as well as the individual who kept the books and performed most management tasks (including writing checks and negotiating with banks and lessors). While the Court determined he did not completely "dominate and control the corporation", his control was clearly pervasive. In contrast, his wife (also a 50% shareholder), worked in the front of the store decorating ice cream cakes and supervising employees in that area (who presumably also decorated ice cream cakes).

The President-husband committed arson. The *K&T Enterprises* Court denied relief to the corporate policyholder, indicating it believed the Michigan Supreme Court would deny relief when "the arsonist, who is the president and sole officer of the corporation, as well as a 50% shareholder, is married to the other 50% shareholder and the couple is neither divorced nor separated and conduct the day to day operations of the corporation jointly".[3] The *K&T Enterprises* Court's ruling was specifically limited to the facts before it.

Of course, the facts at issue in this case are very different from both *United Gratiot* (in which the arsonist shareholder exercised <u>complete</u> control) and *K & T* (in

---

[3] The *K&T Enterprises* court chose to ignore the *United Gratiot* Court's statement that: ". . . [I]n instances where it is not shown that the arsonists had exclusive control over the corporation, insureds are not permitted to deny coverage". Defendant maintains that in doing so, *K&T Enterprises* (which involved a dishonesty exclusion)" recognized that the "complete control test announced in *United Gratiot* was inapplicable to a 'dishonesty exclusion'". This is contradicted by the fact that the *K & T Enterprises* court referenced *United Gratiot* as the "one Michigan intermediate appellate case directly on point". Rather, in ignoring the *United Gratiot* Court's statement, *K & T Enterprises* relied on the facts, not the policy language, reasoning that in *United Gratiot* the arsonist-shareholder had exercised <u>exclusive control</u>, so the language regarding coverage in cases where such control was lacking was mere *dictum*.

13

which the arsonist, 50-percent shareholder exercised pervasive but not complete control, and was married to and an "economic unit" with the only other shareholder). Specifically, in this case:

- The corporate shareholder arsonist is a <u>minority</u> shareholder;

- His control over the business was minimal (specifically, working as a laborer at the store 2 days per week); and

- Rather than being an "economic unit" with (i.e. married to) the innocent shareholder, the two shareholders in this case are adverse, and Mike Sharrak has instituted a lawsuit on behalf of Allen Liquor, Inc. against the arsonist minority shareholder; and

- The arsonist shareholder will not control the disposition of any insurance proceeds.

Whether one relies upon *United Gratiot* or *K&T*, in the case at bar there is not even a colorable argument that the criminal conduct of Bahjet, a minority shareholder who exercised almost no control and is <u>adverse</u> to the majority, controlling shareholder (and President) is attributable to the corporate shareholder. Of course, even if Bahjet's conduct <u>could</u> be attributed to Allen Liquor, Inc., it would not bar coverage because of the provision regarding "acts of destruction by employees."

### C. THE ENDORSEMENT RELIED UPON BY DEFENDANT CONFLICTS WITH MCL 500.2833(2) AND 500.2832, AND IS VOID AS A MATTER OF LAW

In the end, whether Bahjet's conduct is attributable to the corporation is irrelevant, because the exclusion (as least to the extent Defendant claims it abrogates coverage for <u>fire</u> damage) conflicts with Michigan statute, and is therefore void as a matter of law. In that regard, in the property insurance context, the Michigan Legislature has determined that all categories of loss are *not* created equal. Insurance companies have significantly less latitude to limit, eliminate, or impose conditions upon coverage for

losses caused by fire and lighting than they do with respect to other causes of loss (i.e. water or wind). Indeed, MCL 500.2833 (entitled "FIRE INSURANCE CONTRACTS"), specifically provides "(1) Each fire insurance policy issued or delivered in this state shall contain the following provisions: . . . (b) that the policy shall provide, at a minimum, coverage for direct loss *by fire and lightning* . . . ." (emphasis added).

MCL 500.2833 was passed into law by P.A. 1990, No. 305, § 1 (Effective Dec. 14, 1990). Shortly thereafter, the Michigan Legislature repealed its precursor, MCL 500.2832. However, the repeal was incomplete, in that when the Michigan Legislature enacted MCL 500.2833, it took pains to ensure that the protections afforded to policyholders by the older statute – especially those pertaining to coverage for losses caused by fire and lightning -- were preserved. To that end, the final paragraph of the newer statute, MCL 500.2833(2), provides:

> **Except as otherwise provided in this act, each fire insurance policy issued or delivered in this state pursuant to subsection (1) shall contain, at a minimum, the coverage provided in the standard fire policy under former section 2832.**

As stated by the Michigan Court of Appeals in *Angott v. Chubb Group Ins.*, 270 Mich App 465, 483 n.10, 717 NW 2d 341 (2006), "**MCL 500.2832 was repealed by 305 PA 1990, but MCL 500.2833(2) revives and incorporates by reference the 'former section 2832', except as otherwise provided in the act**" (emphasis added). See also *Williams v. Auto Club Group Ins. Co.*, 224 Mich App 313, 318, 569 NW 2d 403 (1997) ("**Legislative intent [as expressed by MCL 500.2833(2)] could not be more clearly expressed; the scope of coverage afforded by § 2832 was left intact**").

15

The "165 lines" of MCL 500.2832, which prior to 1990 set forth required language for the "Michigan Standard Policy" (and which still establish minimum coverage that must afforded by insurers, per MCL 500.2833(2)) state, in relevant part:

> **[Company ] . . . does insure . . . [policyholder] . . . against <u>all</u> direct loss by fire**, lightning and by removal from premises endangered by the perils insured against in this policy, **<u>except as hereinafter provided</u>**, to the property . . .

| 11 | Perils not | This Company shall not be liable for loss by |
| 12 | included | fire or other perils insured against in this |
| 13 | | policy caused, directly or indirectly, by: (a) |
| 14 | | enemy attack by armed forces, including action taken by mili- |
| 15 | | tary, naval or air forces in resisting an actual or an immediately |
| 16 | | impending attack; (b) invasion; (c) insurrection; (d) |
| 17 | | rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) |
| 18 | | order of any civil authority except acts of destruction at the time |
| 19 | | of and for the purpose of preventing the spread of fire, provided |
| 20 | | that such fire did not originate from any of the perils excluded |
| 21 | | by this policy; (i) neglect of the insured to use all reasonable |
| 22 | | means to save and preserve the property at and after a loss, or |
| 23 | | when the property is endangered by fire in neighboring prem- |
| 24 | | ises; (j) nor shall this Company be liable for loss by theft. |
| 25 | Other | Other insurance may be prohibited or the |
| 26 | Insurance | amount of insurance may be limited by en- |
| 27 | | dorsement attached hereto. |

To summarize, under MCL 500.2832:

> •With respect to a short list of specific events, most of which have to do with some sort of attack or military action, the insurer is *not* obligated to indemnify its policyholder, whether the loss was caused by fire, lightning or some "other peril";

> •Aside from the specifically excluded causes of loss, the insurer was (and is, pursuant to MCL 500.2833(2)) required to insure its policyholder against **"all direct loss by fire"** (see initial text of MCL 500.2832); and

> •With respect to "Other Insurance" (i.e. coverage for ice damming, wind, earthquakes and the myriad other causes of loss not specifically addressed in the statute), the company *may*, if it chooses, limit coverage (by endorsement) for reasons other than those set forth in lines 11-24. **Note that this option does not exist for losses caused by "fire, lightning and [ ] removal from premises . . . ."**

This, in a nutshell, is "the coverage provided in the standard fire policy under former section 2832" (MCL 500.2833(2)), which **must** include indemnification against fire,

16

unless it is caused by enemy attack, invasion etc. While an insurer might choose to limit coverage for, by way of example, wind damage or ice damming for whatever reason it deems prudent, this option is simply not available with respect to fire and lightning losses.

Recent activities by the Michigan Legislature confirm its intent to limit the abilities of insurers to restrict liability, through creative use of endorsements or otherwise, for losses caused by fire. In the wake of the September 11, 2001 destruction of the World Trade Center, Michigan insurers (their counsel well aware of the above statutory scheme) ran to the Legislature in an attempt to insulate themselves against losses caused by a particular type of attack that was as much not on the national radar when MCL 500.2832 was drafted: terrorism. The result was MCL 500.2834, which dictates, in relevant part:

> (1) **Notwithstanding** section 2833, a commercial fire insurance policy issued in this state **may** exclude coverage for loss by fire or other perils insured against if the fire or perils were caused directly or indirectly by terrorism. . . . . (emphasis added).

\* \* \*

Note the following:

> (1) MCL 500.2834 states that coverage for fire losses caused by terrorism **may** be excluded **notwithstanding** section 2833[4], which obviously indicates that in the absence of the "terrorism" statute, MCL 500.2833 would bar insurers from excluding fire losses caused by terrorism; and

> (2) The exclusion **permitted** by MCL 500.2834 fits in perfectly with MCL 500.2832's express grant of authority allowing an insurer to exclude fire coverage for a limited number of "attack" related causes of loss (e.g.

---

[4] Webster's New World Dictionary (2d College Ed, 1986) defines "notwithstanding", in relevant part, as "nevertheless", "in spite of the fact that" and "although".

17

invasion, revolution, civil war), but *not* for fire losses caused by other events (e.g. grease fires, careless smoking, bad electrical wiring);

(3) Despite the insurance lobby's enthusiasm to legislatively limit its liability for al-Qaeda violence and the lack of roadblocks to accomplishing its goal (MCL 500.2834 became effective May 29, 2003), the new legislation contains absolutely no reference to enemy attack, invasion, insurrection or usurped power, because MCL 500.2832 and MCL 500.2833(2) already provided that fire caused by these events was excepted from the **general rule that "all direct loss by fire" is covered**; and

(4) As a matter of logic, if prior to enactment of MCL 500.2834 an insurer could simply eliminate, by endorsement, coverage for fires resulting from terrorism, there would have been no need for the statute. At least as far as the insurance industry, friendly legislators and then-Governor Engler were concerned, there *was* such a need, again confirming that unless the Legislature specifically allows an insurer to exclude or limit a particular type of fire-damage (i.e. terrorism, invasion, insurrection), the insurer <u>may not</u> do so.

---------------------------------------

In balancing the interests of policyholders, insurers and (perhaps most important for purposes of the above statute) third parties such as the municipalities that would otherwise have to deal with the charred carcasses of uninsured, unrepaired and foreclosed buildings, the Michigan Legislature developed a clear, detailed framework specifically defining risks that may and may not be excluded. In its wisdom, the Legislature chose to place a heavier burden on insurers when the loss is caused by fire or lightning than when it is cause by wind or water. As a result, an insurer's ability to limit liability <u>for fire-damage</u>, in particular, is limited to that resulting from a short list of

enumerated combat or war-related events, including enemy attack, invasion, insurrection and now (for commercial but not residential losses) terrorism.

Arson by a part time employee or minority shareholder is not an enemy attack or an act of terrorism. Under MCL 500.2833(1) and MCL 500.2833(2), which incorporates MCL 500.2832, Defendant does not have the power to eliminate or limit its liability for fire resulting from this cause of loss, by endorsement or otherwise. If the Michigan Legislature wants to change this, it certainly has the power to do so. *See, e.g.*, MCL 500.2834. However, at this point in time, it has not done so. Pursuant to MCL 500.2860: "Any provision of a fire insurance policy, which is contrary to the provisions of this chapter, shall be absolutely void, and an insurer issuing a fire insurance policy containing any such provision shall be liable to the insured under the policy in the same manner and to the same extent as if the provision were not contained in the policy". *See also Randolph v. State Farm Fire & Cas. Co., 229 Mich App 102, 105, 580 NW 2d 903 (1998).* Because Defendant's endorsement conflicts with Michigan's statutory scheme (and with MCL 500.2833(2), which incorporates MCL 500.2832, in particular), it is void as a matter of law, regardless of the "dishonest acts" exclusion.

### III. CONCLUSION

WHEREFORE, the Plaintiff Allen Liquor, Inc. d/b/a Southgate Liquor respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment.

PLAINTIFF FURTHER REQUESTS that this Honorable Court enter an Order granting Summary Judgment in its favor, pursuant to Fed R. Civ P. 56(b),

for the reasons set forth in the attached Brief.

       Respectfully submitted,

       FABIAN, SKLAR & KING, P.C.


By:  /s/Patrick A. King
    PATRICK A. KING (P27701)
    DOUGLAS G. MCCRAY (P55568)
    Attorney for Plaintiff
    33450 West Twelve Mile Road
    Farmington Hills, MI 48331
    (248) 553-2000
    pking@fabiansklar.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

John D. Honeyman, Esq.
27777 Franklin Rd.
Suite 1100
Southfield, MI 48034
jhoneyman@pjmpc.com

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  None.

       FABIAN, SKLAR & KING, P.C.


By:  /s/Patrick A. King
    PATRICK A. KING (P27701)
    Attorney for Plaintiff
    33450 West Twelve Mile Road
    Farmington Hills, MI 48331
    (248) 553-2000
    pking@fabiansklar.com