UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEN LIQUOR, INC.,

    Plaintiff,

v.

UNITED STATES FIDELITY & GUARANTY CO.,

    Defendant.
_____/

Case No. 06-15279

Honorable Nancy G. Edmunds

**ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [13], AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [15]**

This matter comes before the Court on Defendant United States Fidelity & Guaranty Company's motion for summary judgment, filed on June 18, 2007. In its response to Defendant's motion on July 5, 2007, Plaintiff Allen Liquor, Inc. made its own cross motion for summary judgment. Plaintiff filed the underlying case when Defendant denied coverage on a commercial insurance policy due to a dishonesty exclusion for actions of individuals with certain relationships to the insured. Specifically, Defendant claims that one of Plaintiff's shareholders and its store manager committed arson in the fire that destroyed Plaintiff's business property. For the reasons set forth below, the Court GRANTS Defendant's motion for summary judgment, DENIES Plaintiff's motion for summary judgment and DISMISSES this case.

**I. FACTS**

In all relevant respects, the operative facts of this case are undisputed. Plaintiff

operated a liquor store under the name of "Southgate Liquor" on Eureka Road in Southgate, Michigan. Plaintiff is 51%-owned by Mike Sharrak and 49%-owned by Mike's brother, Bahjet Sharrak.[1] The building from which Plaintiff ran this business was owned by Pierre Properties, L.L.C., and Mike Sharrak owned 100% of that entity. In addition to being one of Plaintiff's shareholders, Bahjet Sharrak worked as an employee of the store approximately two days a week. Bahjet's adult son, Alaa Habib, managed the business. According to Plaintiff's annual reports filed with the State of Michigan, Mike Sharrak has served as Plaintiff's president since 2001, and he has also intermittently been listed as Plaintiff's secretary and treasurer. Bahjet Sharrak has been vice president since 2001 and was listed as secretary in 2005, while Habib was only listed as a corporate officer in 2001 and 2002. None of Plaintiff's public filings indicate any named directors for the corporation. Michigan Department of Labor & Economic Growth, Corporate Entity Documents for Allen Liquor, Inc., *available at* http://www.dleg.state.mi.us/bcs_corp/results.asp?ID=39682A&page_name=corp.

Defendant issued Plaintiff a commercial insurance policy to cover losses to the structure and business personal property located inside that was related to its operation as a liquor store.[2] (Def.'s Mot. for Summ. J. (hereinafter, "Def.'s Mot.") at 1-2; Pl.'s

---

[1] Both parties' pleadings list this name for Mike Sharrak's brother, but all of Bahjet's tax returns and the corporate documents list his last name as either Alshawak, Al Shawak or Al-Shawak. To maintain consistency with the filings on the record, however, the Court will refer to him as Bahjet Sharrak.

[2] An apparent issue arises over whether the building owned by Pierre Properties, L.L.C. is covered under the policy, because Allen Liquor, Inc. is the only named insured. Given the disposition of the instant motions, however, it is unnecessary to resolve this question because the dishonesty exclusion would bar *any* recovery under the policy whatsoever.

Resp. at 6-7.) On June 28, 2004, a fire destroyed Southgate Liquor, and all three individuals were subsequently charged with arson. Charges against Mike Sharrak were dropped, but Bahjet Sharrak and Alaa Habib both entered pleas of nolo contendere, which the state court accepted. (*Id.* at 2.) Plaintiff does not dispute that this is the equivalent of being convicted of arson. Following Plaintiff's claim under the insurance policy, Defendant investigated the fire and denied the claim based upon an exclusion in the policy for dishonest acts of particular individuals. (*Id.* at 3.) Specifically, the policy's dishonesty exclusion reads:

> e. Dishonesty [We will not pay for loss caused by or resulting from d]ishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:
>
> (1) Whether acting alone or in collusion with others; or
>
> (2) Whether or not occurring during the hours of employment.
>
> This exclusion does not apply to acts of destruction by your employees or leased workers, but does apply to "theft" by employees or leased workers .
> . . .

(Insurance Policy ¶ C.2.e, Def.'s Mot., Ex. A at 25.) Defendant claims that Bahjet Sharrak and Alaa Habib's connection to the fire bring them within the terms of the exclusion, so it denied Plaintiff's claim.

## II. STANDARD OF REVIEW–MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

3

must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III. ANALYSIS

In diversity cases such as this one, a federal court must apply the substantive law of the applicable state according to decisions of that state's highest court or legislature. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, neither party disputes that Michigan law applies. In the absence of any definitive statement from the Michigan Supreme Court, this Court may consider "all relevant data," including analogous Michigan Supreme Court cases, Michigan appellate court cases ("although a federal

court is not bound by lower court determinations if convinced by other data that the state's highest court would determine otherwise,"), restatements of law, law review articles, and cases from other jurisdictions. *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985). Under Michigan law, "the 'insured bears the burden of proving coverage, while the insurer must prove that an exclusion to coverage is applicable.'" *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 505 n.6 (Mich. 1995) (quoting *Arco Indus. Corp. v. American Motorists Ins. Co.*, 531 N.W.2d 168, 182 (Mich. 1995) (Boyle, J., concurring) (*rev'd on other grounds*, *Frankenmuth Mut. Ins. Co. v. Masters*, 595 N.W.2d 832 (Mich. 1999))).

Defendant cites two primary cases in support of its motion for summary judgment, and Plaintiff does not raise any others that are allegedly on point to the instant dispute. The first case chronologically is *United Gratiot Furniture Mart, Inc. v. Michigan Basic Property Insurance Association*, 406 N.W. 2d 239 (Mich. Ct. App. 1987), where the Michigan Court of Appeals held that the defendant insurer could deny coverage in a case involving arson by one of the plaintiff's shareholders. There, Samuel Goldberg owned 44% of the plaintiff's stock,[3] and a lower court jury found that he was involved in the fire and that he exercised such "extensive [control] that his actions should be imputed to the corporation." *United Gratiot*, 406 N.W.2d at 240. On appeal, the plaintiff argued that the corporation itself was the insured party, "and that denying coverage to the corporation unfairly penalizes the other shareholders, who owned fifty-six percent of the corporation's stock." *Id.* There is no mention in *United Gratiot* of any dishonesty

---

[3] Goldberg's wife owned 24%, his two daughters each owned 12%, and the corporation's attorney owned the remaining 8%. *United Gratiot*, 406 N.W.2d at 240.

5

exclusion in the policy that is comparable to the one at issue in the instant case, however.

The court then summarized a number of cases from other jurisdictions and concluded that

> [i]n almost every case which has addressed the issue now before us, it appears that the point on which the decision turns is the degree of control which the incendiarist has exerted over the affairs of the corporation. If the individual who set or procured the setting of the fire dominates the corporation to such an extent that he has exclusive control over the corporation, the corporation is precluded from recovering benefits under its fire insurance policy. This rule is applied even when the arsonist is not a majority stockholder. However, in instances where it is not shown that the arsonists had exclusive control over the corporation, insurers are not permitted to deny coverage.

*Id.* at 241 (citations omitted).

In conclusion, the *United Gratiot* court held "that an insurance carrier may assert arson as a defense against a corporation's claim of fire loss if it is factually demonstrated that the individual who set or procured the setting of the fire exercised complete dominance and control over the affairs of the corporation." *Id.* at 242.

Next, Defendant directs its focus to *K & T Enterprises, Inc. v. Zurich Insurance Company*, 97 F.3d 171 (6th Cir. 1996), where the Sixth Circuit discussed *United Gratiot's* exclusive control requirement but still denied coverage even though a 50% shareholder of a Dairy Queen franchise, who pled guilty to a federal count of mail fraud in connection with arson of the business, did not completely control the plaintiff corporation. In that case, the corporation was owned equally by a husband and wife, but she denied knowledge of his conspiracy to commit arson, and the evidence demonstrated that each of them had an equal hand in operating the business, so the

6

arsonist husband did not fall within the "exclusive control" situation at bar in *United Gratiot*. The underlying insurance policy in *K & T* contained the following relevant exclusion: "We will not pay for loss or damage ... [r]esulting from any dishonest or criminal act that [K & T] or any of [its] partners commit whether acting alone or in collusion with other persons." 97 F.3d at 177.

The defendant in *K & T* urged the Sixth Circuit to interpret *United Gratiot* in a limited fashion, and conclude that the Michigan Court of Appeals was merely listing exclusive corporate control by a shareholder as one situation that would support denying coverage, and not as a requirement that had to be met in all cases. *Id.* The court recognized that *United Gratiot* could be "read in a broader way to establish that *only* when it can be shown that a corporation is completely dominated and controlled by the arsonist shareholder can recovery be properly denied." *Id.* (emphasis in original). In rejecting this interpretation, however, the Sixth Circuit first stated four policy reasons why *United Gratiot* should not be read in this fashion, concluding with the observation that "the ultimate effect of this rule would be to encourage arson for profit . . . [and expand] the potential for moral hazard problems." *Id.* at 177-78.

Noting that policy considerations were insufficient on their own, and that it must still consider what the Michigan Supreme Court would find, the court examined several of the cases that *United Gratiot* relied upon in reaching its holding. Finding a degree of "indeterminacy" in *United Gratiot's* holding and the cases on both sides of the issue from other jurisdictions, the *K & T* court nevertheless held "that the Michigan Supreme Court would sustain [the defendant's] arson defense in this case as a matter of law." *Id.* at 179. That said, the Sixth Circuit expressly noted that it was only deciding a case

7

under Michigan law, so the case's holding is limited to this particular set of facts: "when the arsonist, who is the president and sole officer of the corporation, as well as a 50% shareholder, is married to the other 50% shareholder and the couple is neither divorced nor separated and conduct the day-to-day operations of the corporation jointly." *Id.*

Neither *United Gratiot* nor *K & T* are directly on point with the facts of the instant dispute, however, so this Court is not compelled to reach a particular result under either of those cases. Furthermore, there is one additional operative fact that supports a conclusion that this case is materially distinguishable from both those–namely, the breadth of the exclusionary clause in Defendant's insurance policy with Plaintiff. Several courts in other jurisdictions have recognized that the existence of a specific contractual provision excluding coverage under certain circumstances obviates the need to consider an equivalent common law defense, such as arson.[4] Nothing in *United Gratiot* mentions an exclusionary clause, so that case appears to be truly more of a common law decision than one of contract interpretation. While *K & T* did briefly mention the exclusionary provision in the policy that was before that court, the language was much narrower in scope than the one at issue here, as that exclusion only applied to the corporation and its partners. *K & T*, 97 F.3d at 177. Here, on the other hand,

---

[4] *See RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (holding that Missouri common law on a corporation's ability to collect insurance proceeds is inapplicable when the particular policy at issue contains a contractual exclusion that would bar payment under the facts of the case); *One Suzie-Q Corp. v. Secura Ins. Co.*, 198 F. Supp. 2d 1105, 1108 (E.D. Mo. 2002) (distinguishing between a case involving the common law defense of arson and one where a policy provision applies that would contractually exclude coverage–in the latter, once an exclusion applies there is no need to consider the affirmative defense of arson); *Minnesota Bond Ltd. v. St. Paul Mercury Ins. Co.*, 706 P.2d 942, 943 (Or. 1985).

8

Defendant's policy excludes dishonest behavior of at least thirteen classes of actors: (1) Plaintiff, (2) "anyone else with an interest in the property," (3) any (i) partners, (ii) employees, (iii) directors, (iv) trustees, or (v) authorized representatives, of either Plaintiff or anyone else with an interest in the property, or (4) "anyone to whom you entrust the property for any purpose." (¶ C.2.e, Def.'s Mot., Ex. A at 25.) Thus, Defendant's exclusion reaches much farther than that which was at bar in *K & T*.

Plaintiff admits that Bahjet Sharrak was a 49% shareholder of Plaintiff, so the Court has no trouble concluding that he falls within the category of "anyone else with an interest in the property," due to the undisputed fact that Plaintiff was a closely-held corporation that owned all of the business personal property insured under Defendant's policy.[5] It is possible to argue that Bahjet Sharrak could also be termed an employee, which would qualify him under the exception to the exclusion for "acts of destruction by [Plaintiff's] employees." Courts in several other jurisdictions have rejected this interpretation, however, reasoning instead that an individual who falls within another separate class listed in the exclusion provision does not qualify for the employee exception. *See Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328, 1377-78 (11th Cir. 1997) (under Florida law, the employee exception did not apply to a corporate officer because a contrary interpretation would render the separate mention of officers superfluous); *One Suzie-Q*, 198 F. Supp. 2d at 1108 (same result for an employee that was also a corporate officer, its authorized

---

[5]There is also evidence that Habib, as Plaintiff's store manager, would fall within the exclusion as one "to whom [Plaintiff entrusted] the property for any purpose." Once Bahjet Sharrak is included under the exclusion, however, there is no need to consider whether it applies to any other individuals with a connection to the arson as well.

9

representative, and to whom the corporation entrusted property). The Court sees no reason to believe that the Michigan Supreme Court would depart from this well-reasoned authority, given that it has already recognized that a document should be read in a way that gives meaning to all of its terms. *Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 841 (Mich. 1997).

Plaintiff makes a final gasp in its attempt to recover the subject insurance proceeds by arguing that the dishonesty exclusion is void as a matter of law for conflicting with a Michigan law requiring insurance policies to provide coverage for fire-related losses. Mich. Comp. Laws § 500.2833 (repealing former Mich. Comp. Laws § 500.2832, but retaining that section's provisions regarding required basic coverage for fire-related losses). Specifically, Plaintiff claims that former § 500.2832 only allowed insurers to exclude coverage for an enumerated list of particularly serious perils, such as military attack, war or other forms of upheaval, and that Defendant's dishonesty exclusion is void as a matter of law for not being comparable to these types of events. In addition to not citing a single case that supports this interpretation of former § 500.2832, Plaintiff's position disregards the fact that the dishonesty exclusion at issue here is not seeking to disclaim Defendant's liability for a particular type of *peril*. Rather, Defendant's policy exclusion addresses prohibited *conduct by individuals* with certain relationships to Plaintiff, which is not the same thing as the broad classes of perils included in former § 500.2832. Moreover, Plaintiff's argument is belied by the fact that the previously-discussed opinions regarding denial of coverage in cases of arson from the *United Gratiot* and *K & T* courts would have been unnecessary, had Plaintiff's interpretation of these Michigan statutes been an accurate reflection of state law.

**IV. CONCLUSION**

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows: (1) Defendant's motion for summary judgment is GRANTED, (2) Plaintiff's motion for summary judgment is DENIED, and (3) this case is DISMISSED.

SO ORDERED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: August 6, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 6, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager